UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUPPLY NETWORK, INC.,

       Plaintiff,

v.

VICTAULIC COMPANY,

       Defendant.
_____/

Case No. 1:09-cv-226

HON. JANET T. NEFF

## **OPINION**

Plaintiff filed this declaratory judgment action in Kent Circuit Court in Michigan, seeking a declaration that defendant has a duty to defend and indemnify plaintiff in litigation involving the parties' supply of pipe for fire sprinkler systems. Defendant removed the action to this Court, and, following the Rule 16 Conference, filed a Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court in Connecticut on the ground that this declaratory action is directly related to a pending Connecticut state court case filed against the parties.

On October 26, 2009, the Court conducted a Pre-Motion Conference with counsel concerning plaintiff's request to file a motion for summary judgment, and in conjunction with the Pre-Motion Conference, the Court heard the parties' positions on defendant's pending Motion to Transfer Venue and the propriety of declaratory relief by this Court. For the reasons that follow, the Court declines to entertain plaintiff's request for declaratory relief pursuant to 28 U.S.C. § 2201. The Court concludes that the question whether a contractual duty to defend and indemnify arises under the parties' contract is properly resolved in the context of the case-specific facts of the

underlying tort case. Accordingly, the Court denies defendant's Motion to Transfer Venue to the United States District Court in Connecticut.

I. Background

In December 2004, the parties entered into a Supply Agreement by which plaintiff agreed to purchase Firelock CPVC pipe from defendant pipe manufacturer, and plaintiff agreed to sell certain fire sprinklers to defendant. The Supply Agreement contained a "Reciprocal Indemnification and Insurance Provision," under which each party agreed to indemnify and defend the other against claims alleging defect in the products that each sold to the other pursuant to the contract:

> I.  INDEMNIFICATION
>
> In consideration of the parties each agreeing to supply certain products to the other, the supplier of the product (Supplier) hereby agrees to indemnify the other party (Purchaser) under the following terms and conditions:
>
> A.  <u>Indemnification of Purchase by Supplier</u>
>
> Supplier shall indemnify and hold harmless Purchaser . . . from and against any claims by a third party arising out of assertions of product liability based in whole or in part on allegations that a product sold by the indemnified party and which was supplied by Supplier was defective . . . .
>
> * * *
>
> D.  <u>Procedure</u>
>
> (i)  For the Purchaser to be entitled to any indemnification, the purchaser must notify the Supplier in writing of the Third Party Claim promptly following receipt by the Purchaser of written notice of the Third Party Claim. . . .
>
> (ii)  If a Third Party Claim is made the Supplier shall be obligated to assume its defense with counsel selected by it. The Purchaser shall have the right to participate in the defense and employ counsel at its own expense, it being understood that the Supplier shall control such defense. . . .

(Pl. First Am. Compl. ¶ 10, Ex. 2; Def. Ans. to First Am. Compl. ¶ 10.)

Pursuant to a provision for termination of the agreement, plaintiff notified defendant that it was terminating the Supply Agreement effective June 16, 2006. (Pl. First Am. Compl. ¶ 13) However, prior to termination of the agreement, defendant supplied pipe to plaintiff for use in the construction of the Wauregan Hotel in Connecticut. On January 20, 2009, the owner of the Hotel filed a lawsuit in Superior Court in Connecticut against plaintiff and defendant, alleging that the pipe used in the Hotel leaked, resulting in substantial damage to the Hotel. Plaintiff tendered the Wauregan Hotel claim to defendant, invoking the Indemnification Provision; however, defendant rejected the tender. (Pl. First Am. Compl. ¶¶ 14-18, Ex. 6)

Additional claims involving the pipe supplied under the parties' Agreement have arisen in Florida and Georgia. The parties have been named as third-party defendants in a lawsuit in Florida Circuit Court for allegedly defective pipe used in the Neo Vertika Condominiums in Miami, Florida. There is also a pending claim that pipe used in the Realm Master Condominiums in Georgia has cracked and leaked, causing structural damage. Defendant likewise rejected plaintiff's tender of these two additional claims. (Pl. First Am. Compl. ¶¶ 19-26, Exs. 8, 10)

Plaintiff filed a declaratory judgment action in Kent Circuit Court, seeking a declaration that defendant was obligated to defend and indemnify plaintiff for the claim for damages to the Wauregan Hotel; plaintiff's complaint did not reference other pending claims. On March 12, 2009, defendant removed the action to this Court on the basis of diversity jurisdiction. Plaintiff is incorporated in Michigan and has its principal place of business in Michigan. Defendant is incorporated in New Jersey and has its principal place of business in Pennsylvania. (Dkt 1, Not. of Removal, ¶ 3)

Defendant thereafter sought a transfer of venue to the United States District Court in Connecticut. In the meantime, plaintiff filed its First Amended Complaint, incorporating the Florida and Georgia claims.

## II. Legal Standard

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995). "In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration … ." 28 U.S.C. § 2201(a).

The Declaratory Judgment Act is "'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton,* 515 U.S. 277 at 287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 241 (1952)). Ultimately, "'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.'" *Id.* (quoting *Wycoff,* 344 U.S. at 243); *see also AmSouth Bank v. Dale,* 386 F.3d 763, 784 (6th Cir. 2004).

The Sixth Circuit Court of Appeals has recognized two principal criteria favoring declaratory relief:

> "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and
>
> (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

4

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.,* 746 F.2d 323, 326 (6th Cir. 1984) (quoting E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941)) (formatting altered). If neither of these results can be accomplished, the court should decline the request for declaratory relief. *Id.*

Five factors must be considered in deciding whether to exercise jurisdiction:

> (1) whether the judgment would settle the controversy;
>
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy that is better or more effective.

*Grand Trunk W. R.R. Co., supra; see also Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 554 (6th Cir. 2008).

### III. Discussion of Factors

At issue is whether defendant is obligated, under the parties' pipe supply contract, to defend and indemnify plaintiff against the pending state court claims for damages stemming from alleged defects in the pipe. Plaintiff, a citizen of Michigan, urges this Court to resolve the controversy on the grounds that the dispute is solely a matter of contract interpretation involving only matters of the contract negotiation and execution, which occurred in Michigan and Pennsylvania. The Court disagrees. The Court is persuaded that the issue of the duty to defend and indemnify is properly resolved in the case-specific context of the underlying claims.

5

*Factor (1): whether the judgment would settle the controversy*

Given the factual circumstances presented, it is highly questionable whether the judgment would settle the controversy. This case arises from the supply of pipe for fire sprinkler systems in various states, under differing facts and conditions. As defendant legitimately notes, a number of circumstances may affect the liability attributable to either plaintiff or defendant, such as handling of the pipe, specifications, installation procedures, contractor performance—all potentially situs-specific considerations. Since the duty to defend may rest on different legal, and even factual, considerations from the question of indemnity, it is conceivable that any declaratory relief granted would be of limited effect in conclusively resolving the controversy presented. *See Flowers*, 513 F.3d at 555-56 (noting the case-specific considerations encompassed by this factor).

*Factor (2): whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue*

Factor (2) is closely related to the first factor. *Flowers*, 513 F.3d at 557. Here, however, factor (2) involves competing considerations in light of the broader circumstances involved in this case. That is, while the declaratory judgment action may serve to clarify the legal relations at issue, this matter can also be efficiently resolved in the underlying Connecticut state court action, where both parties are defendants and where discovery and adequate facts are before the court to fully consider the issues of the duty to defend and indemnify vis-à-vis the claims alleged concerning the Wauregan Hotel. Further, while multiple underlying claims in different states may favor a single-forum resolution as most efficient, it likewise may present inherent complications in resolving these factual and legal issues outside the forums and situs of the various underlying controversies.

Unlike some cases involving questions of the duty to defend and indemnity, this case involves no single generally dispositive issue. *See id.* at 557 (the declaratory order clarified the

contractual duties of indemnification by determining that the defendant was not an insured under the policy, relieving plaintiff of any obligation for payment). Thus, it is by no means clear that this action would properly "resolve, once and finally," the question of indemnity between the parties, and to the contrary, may confuse the issues of liability in the state courts. *See id*. This factor does not weigh in favor of granting declaratory relief.

*Factor (3): whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"*

There is no express assertion or evidence of an improper motive in plaintiff's filing of the declaratory judgment action. Neither, however, is this a case where one or the other of the parties is not a party to the underlying action. *See Flowers,* 513 F.3d at 559. While it is apparent that the parties may stand to gain procedural advantage from their respective positions on the proper forum, on balance, this factor does not weigh heavily for or against plaintiff's request for declaratory relief by this Court.

*Factor (4): whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction*

In *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000), the court acknowledged three subfactors to be considered when determining whether the action will increase friction between federal and state courts. These factors include: (1) "'whether the underlying factual issues are important to an informed resolution of the case'"; (2) "'whether the state trial court is in a better position to evaluate those factual issues than is the federal court'"; and (3) "'whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.'" *Id.*; *Flowers,* 513 F.3d at 560.

In this case, all three subfactors support resolution in the state court of the parties' disputes over the duty to defend and indemnity. There is no assertion here that federal law is in any way implicated in this case. To the contrary, the legal issues related to both the contract and liability appear to rest wholly on state law. Moreover, the Court is fully persuaded, based on the limited record before the Court, that the underlying factual issues are important to an informed resolution of the case and that there is a close nexus between underlying factual and legal issues and state law. As noted earlier, the questions of the duty to defend and indemnity may hinge to a large extent on the state law claims of liability. Contrary to plaintiff's assertions, these issues are unlikely to be resolved based solely on the language within the four corners of the Agreement.

Any attempt to resolve the issues by this Court would likely encroach on state court jurisdiction, particularly given the intertwined duty-to-defend, indemnity, and liability issues. Further, the legal and factual resolution of these issues may vary from state to state, and case to case. Any resolution of underlying factual issues by this Court could ultimately conflict with determinations by the state court. Where a federal court is required to make factual findings that may conflict with similar findings of the state court, the exercise of jurisdiction is inappropriate. *Flowers,* 513 F.3d at 560. Given the number of variables that may influence the resolution of the duty to defend and indemnity, the Court concludes that this factor weighs strongly against any exercise of jurisdiction by the federal court.

*Factor (5): whether there is an alternative remedy that is better or more effective*

To the extent that defendant's Motion to Transfer Venue to the United States District Court in Connecticut is an available alternative remedy, the Court concludes that a mere transfer of venue would not be appropriate in the circumstances of this case. As noted above in factor (4), the parties'

dispute involves only matters of state law, and in this Court's view, declining federal jurisdiction is preferable. Given that both parties are defending in the Connecticut state court, as appears to be the case in the other state court litigation, the parties have an available alternative remedy of having their dispute resolved in the underlying state court litigation.

## IV. Conclusion

As discussed above, underlying factual and legal issues are important to an informed resolution of the present dispute, and the state trial court is in a better position to evaluate those issues. There will likely be considerable overlap between the factual and legal issues concerning the duty to defend/indemnity and the state court claims. Having considered all of the *Grand Trunk* factors, the Court exercises its discretion and declines to entertain plaintiff's declaratory judgment action. Accordingly, this action is dismissed. Defendant's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) is denied.

An Order of Dismissal will be entered consistent with this Opinion.


DATED: November 9, 2009                /s/ Janet T. Neff
                                                               JANET T. NEFF
                                                               United States District Judge